POWELL, &c.,

*v.*

GILBERT'S ADM'R.*

(*Special Court of Appeals of Virginia, March, 1877.*)

[Virginia Law Journal, 1877, p. 179.]

**Judgments—Suit to Subject Land to Payment of—Bankruptcy Proceedings—Judgment Creditor Not Party to—Case at Bar.**

In March, 1867, G. recovered a judgment against P. and Q., which was duly docketed; and on the 8th February, 1869, he instituted a suit in chancery in a state court to subject the lands of the judgment debtors to the payment of the judgment. Prior to the institution of the said suit P. and Q. filed petitions in bankruptcy, and were declared bankrupts by the district court of the United States for the district of Virginia. In the bankruptcy proceedings the lands of P. and Q. were sold and bought by themselves—and in those proceedings they were finally duly discharged as bankrupts. To those proceedings G. was never made, nor in any wise became, a party. After the proceedings in the bankrupt court were ended, the state court proceeded with the chancery suit, and after a reference, and a report from a commissioner showing the liens, and that the rents of the land would not satisfy the same in five years, decreed a sale of the lands of P. and Q. for the payment of the liens thereon. On appeal, it was *held*:

**Same—Same—Same—Same—Jurisdiction.**

1. The state court had jurisdiction of this suit.

**Same—Same—Same—Same—Effect.**

2. G. never having been a party to the proceedings in the bankrupt court, was not bound thereby.

**Sale of Land under Decree—Day to Redeem.**

3. The court below did not err in decreeing a peremptory sale of the land without giving a day to redeem.

*See Ray *v.* Norseworthy, 23 Wall. 128.—Ed.

The facts sufficiently appear in the opinion.

WINGFIELD, J., delivered the opinion of the court.

In March, 1867, the appellee recovered a judgment against the appellants in the county court of Franklin, which was regularly entered on the lien docket of that county, and on the 8th of February, 1869, he instituted his suit in the circuit court of that county to enforce his judgment lien and to subject the lands of the appellants to its payment. The bill charges that since the judgment was obtained the appellants have filed their petition in bankruptcy in the district court of the United States for the district of Virginia, in order to have themselves declared bankrupts and to take advantage of the act of congress commonly called a bankrupt law, in order to release and discharge themselves from the payment of their debts to their creditors, and that his judgment is a lien upon the lands of the appellants paramount to any rights acquired by their assignees in bankruptcy. The appellants and their assignees in bankruptcy, and the executors of Benjamin Hancock (who, it is alleged, also had a judgment lien on the lands of the appellants), are made party defendants—the process was duly served upon all of the defendants—and the parties failing to answer, the bill was taken for confessed, and the case was referred to a commissioner to take an account of the lands owned by the judgment debtors at the date of the judgment ; and of its annual value and their liens thereon, and their priorities in point of time ; and in September, 1870, the commissioner made his report, showing which lands the appellants owned at the date of the judgment ; and that the annual value thereof was one hundred dollars, and that the same would not be sufficient to discharge the judgment lien of the appellee in five years. After this the appellants filed their several answers (to which general replications were made), in which they allege that

they have been regularly declared bankrupts and have been duly discharged, and insist that the court had no jurisdiction of the subject matter of the bill. But that the bankrupt court had a superior and exclusive jurisdiction in all matters arising under the statute ; and that the power of the state court to interfere at any stage of the proceedings in the bankrupt court, to subject any portion of the property of the bankrupt is necessarily excluded. That the assignee acquired all of the estate of the bankrupts, real and personal, and acquired it for the general benefit of all of their creditors. That the appellee was seeking, by his suit, to acquire a preference over the other creditors—a thing expressly forbidden by the bankrupt law—and that as the claim of the appellee was provable in the bankrupt court, the discharge of the appellants is a full and complete bar to any suit on it, as by the provision of the act, all suits founded on any such claim are expressly barred ; and in conclusion of their answers each of them says, ''He demurs to the plaintiff's bill, and prays that it may be considered as if the same was now formally pleaded.'' The commissioner appends to his report a statement in which he says, ''He is required by the appellant Powell, to say that on the 8th of May, 1868, he was declared a bankrupt by the district court of the United States for the district of Virginia ; that by an order of said court made on the 30th of November, 1868, his assignees in bankruptcy were directed to sell all of his real estate ; that in January, 1869, they sold the same at public auction and he became the purchaser of it himself, and that the same was by an order of said court conveyed to him by the assignee on the 29th of July, 1869, and that on the 26th of March, 1870, he was duly discharged as a bankrupt in the form required by the act of congress.'' And a similar statement, made at the instance of the appellant Quarles, as to his discharge and as to the sale and purchase by himself of his own land, is also appended by the commissioner to his report.

But it is not alleged in the answers, and no where appears in the record, that the appellee was a party to the bankrupt proceedings, or that the bankrupt court in any way undertook to deal with or adjust or dispose of his lien on the lands of the appellants acquired before they became bankrupts.

After the proceedings in the bankrupt court were ended, the circuit court of Franklin proceeded with the suit, which had been brought in that court to enforce the liens, and in October, 1870, decreed a sale of the lands owned by the appellants at the date of the judgments in satisfaction of the judgment liens of the appellee. From this decree an appeal has been obtained by the appellants.

In their petition they assign as errors—1st. That as they had been adjudged bankrupts prior to the institution of this suit, and the bankrupt court had assumed jurisdiction of their estates, and had finally sold their lands and confirmed the sales and granted them a final discharge from their debts, and had thus exercised such jurisdiction, hence, aside from the right of the circuit court to take jurisdiction at all in the case, it should not, after their answers and the report of the commissioner were filed, have proceeded until their assignees were made parties.

2d. That the district court of the United States had full and complete (if not exclusive) jurisdiction from the date of filing the petition, as to all controversies arising between the bankrupt and any creditor "who shall claim any debt or demand under the bankruptcy," and the collection of the assets of the bankrupt, ascertainment and liquidation of the liens, or other specific claims thereon, the adjustment of the various priorities and conflicting interests of all parties, and marshaling and disposing of the different funds and assets of the bankrupt, and that the assignee was charged with full rights and duties as to the estate, to be enforced and performed under the supervision of the bankrupt court.

That as to each of the appellants in this case, this jurisdiction had been vested, and the exercise of it assumed before the institution of this suit ; and that it is well settled, when a court of competent jurisdiction has in process of adjudication any question, that jurisdiction can not be ousted and interfered with by any other court, unless of superior jurisdiction ; and that, therefore, no lien can be enforced in a state court after the filing of the bankrupt's petition in the district court of the United States.

3d. That the demurrers of the appellants were not noticed, but were entirely disregarded by the circuit court.

4th. That the decree for the sale by the circuit court was peremptory, and no day was given the defendants to redeem, by paying the plaintiff's debt.

The jurisdiction of the bankrupt courts, as defined in the first section of the act (copied in the petition of the appellants), extends to all "cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy," &c., "to the collection of all the assets of the bankrupt, to the liquidation of the liens thereon, to the adjustment of the various priorities and conflicting interests of all parties," and to the marshaling of the assets so as to "secure the rights of all parties," &c.

The 14th section provides that the judge or register shall, by an instrument under his hand, "assign and convey to the assignee all the estate, real and personal, of the bankrupt," &c. ; and that "the assignee shall have authority, under the order and direction of the court, to redeem or discharge any mortgage or conditional contract or pledge or deposit or lien upon any property, real or personal, whenever payable, and to tender due performance of the condition thereof, or to sell the same subject to such mortgage, lien, or other encumbrance.

The 20th section provides that "when a creditor has a mortgage or pledge of real or personal estate of the bankrupt or lien thereon for securing the payment of a debt, &c., he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property;" "or, he may release or convey his claim to the assignee upon such property, and be admitted to prove his whole debt;" or, "if the value of the property exceeds the sum for which it is so held for security, the assignee may release to the creditor the bankrupt's right of redemption therein on receiving such excess, or may sell it subject to the claims of the creditor thereon," &c.; but, "if the property is not so sold or released and delivered up, the creditor shall not be allowed to prove any part of his debt."

The 21st section provides, "that no creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity against the bankrupt;" and that "no creditor, whose debt is provable under this act, shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt until the question of the debtor's discharge shall have been determined."

The theory of the defence in the court below and of the appeal here, is based upon the idea, that as the appellants filed their petition to take advantage of the bankrupt law before the suit was brought in the state court, and as the bankrupt court had the right to discharge them from the payment of their debts and to dispose of their property, it necessarily followed that it drew to it the right to deal with and to dispose of the appellee's lien on the land owned by them at the time the judgment was acquired; and that notwithstanding the appellee's judgment was a lien on it before they filed their petition, that after that was filed, the state court had no jurisdiction of the subject of the lien and no right to enforce it.

The bankrupt act only intended to give the bankrupt court the right to deal with and dispose of the property that belonged to the bankrupt at the time of the act of bankruptcy, and not that of other persons ; and property on which there was such lien did not belong to the bankrupt ; but he could only claim the surplus, and had only a right to redeem it by discharging the lien ; and hence the provisions of the act for the redemption of the property by the assignee, where the creditor did not prove his debt, or the sale of it subject to such lien where it was not redeemed.    And I think the right of the bankrupt court, to dispose of such lien without the consent of the creditor, extremely questionable (to say the least of it) under any fair construction of the act.    The bankrupt court, if what is called the provision for voluntary bankruptcy can fairly, under the provision of the constitution granting to congress the power to pass a bankrupt law, be properly termed a bankrupt law within the meaning of the constitution (a question not necessary to be decided in this case), would clearly have the right to discharge the bankrupt on his own petition from the payment of his debts in proceedings had under the general publication against creditors.    But this would only discharge the debt and would not affect the creditor's right to any lien he had before acquired for its payment ; and his right to his lien would in no way be impaired by the discharge of the bankrupt.    True, if the subject of the lien did not pay the whole debt, the bankrupt would stand discharged from the residue.

If a creditor had a lien on land of a bankrupt for a thousand dollars, which was only worth five hundred, it would not belong to the bankrupt in any just sense, and he would really have no interest in it.    Why should the creditor, in such a case, be compelled to go, perhaps hundreds of miles from home (at a great inconvenience and expense), to a bankrupt court to have his lien enforced, when no possible good could arise from it either to the bankrupt or his gen-

eral creditors, and, at last, only to see his substance divided
among and devoured by a parcel of hungry cormorants? I
do not think such a thing could have been meant by congress
in passing the act; but, considering the whole act together,
the fair inference from it is, that where the lien is not
redeemed, and the lien creditor does not come in and prove
his debt, the bankrupt court has only the right to deal with
and dispose of the bankrupt's equity of redemption.

But under the jurisdiction given to those courts under the
first section of the act "for adjudication as to all controver-
sies arising between the bankrupt, and any creditor or cred-
itors who shall claim any debt or demand under the bankruptcy,
the collection of the assets of the bankrupt, the ascer-
tainment and liquidation of the liens, &c., thereon, the
adjustment of the various priorities and conflicting interests
of all parties, and marshaling and disposing of the different
funds and assets of the bankrupt." Many of the district
courts have claimed the right of compelling persons having
liens on property formerly owned by the bankrupt, and who
had not proved their debts and were not parties to the pro-
ceedings in bankruptcy, to come into the bankrupt courts,
and have their liens adjudicated and disposed of there.
Whether this is a proper exercise of jurisdiction under the
act need not be questioned, so far as the decision of this case
is concerned, for it is a conceded principle accepted every
where, that no one is bound by the judgment of a court in
a case in which he is not a party, and the decree of a bank-
rupt court is no exception to this general principle, but in
the single instance of the right to discharge the debtor from
the payment of his debts upon the general publication and
notice, whether the creditors appear or not. But it is agreed
on all sides, that in order to dispose of the lien of a creditor
who has not proved his debt, and to entitle the bankrupt
court to adjust and dispose of the subject and sell the prop-

1 Va Dec—15

erty free of the lien, it is necessary to make the lien creditor a party to the proceedings in bankruptcy, in order to enable him to defend himself and contest the right to sell or dispose of the subject of his lien.    This is done upon the petition of the assignee in behalf of and in furtherance of the interests of the general creditors, and by passing an order to shew cause against it, both of which have to be served on the lien creditor ; and as the bankrupt would have no interest in the property if it was not sufficient to pay off the lien.    It would be a good defence to the rule that the property was not sufficient to discharge the lien.

In Bump's Practice in Bankruptcy, edition of 1871, the mode of proceeding in such a case is laid down on pages 134–5 (and he cites many reported cases in support of his text), it is there stated, as the rule, that "whenever the assignee wishes to sell property, free from liens, he must apply to the court for an order to that effect." This application, he says "should never be made when the property has no market value or one that is clearly less than the debt secured by the lien.    He acts only in the interests of the general creditors and should institute no proceedings except for their benefit.    It is no part of his duty to make such an application unless he believes that such a sale will create a larger fund for distribution among the unsecured creditors. The proper mode of making such an application is by a petition addressed to the judge of the court of bankruptcy, properly entitled in the cause of bankruptcy, and duly verified, as the granting of such an order is not a matter of course, the petition should set forth the facts that justify the application and not merely rely upon the petitioner's belief. The question is to be decided upon the belief of the court and not upon the belief of the assignee, and hence the matters necessary to produce conviction should be fully stated. As this proceeding specially affects the rights of the second creditor, he must be properly notified and summoned to

appear and protect his interests. This is done by passing an order to shew cause, and directing that a copy of such an order and petition be served upon him, &c. The defence to the application is, that the property is worth less than the lien claim, or that the creditor will be injured by such sale.'' See also, page 324 same work.

It appears plain, then, that unless the appellee was summoned before the bankrupt court and his lien was there adjudicated, after he had been made a party to the proceedings, he can in no wise be affected by any order or decree made there, or by any sale made under such order or decree.

It no where appears by the record of the case now under consideration, that the appellee was ever a party to the case in bankruptcy, or that that court ever assumed jurisdiction over or ever in any matter adjudicated or adjusted or disposed of his lien. Nor is there any evidence of any sale of the land in question under any order of that court, except the averment in the answers to the bill, unsupported by any evidence, except a paper appended to the record, purporting to be a deed from McKinsay & Brown, the assignees in bankruptcy, of the appellants, conveying to the appellant, Powell, the tract of land formerly owned by him, containing 375 acres, for the sum of $187.50, the price at which the deed recites it was sold to him, and the recital in the deed that it was sold and conveyed by order of the bankrupt court, but which deed does not appear to be part of the record or to have been before the circuit court when the decree was made by it; and there is no copy of the record of the bankrupt court or of the alleged orders for the sale and conveyance of the land by the assignee to support the recitals of the deed in this respect. But if the averments of the answers and the recitals of the deed could be considered as of any weight without proof to support them, yet it is not any where asserted that the appellee

was a party to the bankrupt case, or that his lien was adjudicated by the bankrupt court, or that the land in question was sold free of the liens on it.   The answers aver that the land was sold by the assignees, but it is neither stated in them nor in the deed, that it was sold free of the liens thereon. If this had been so, it is fair to presume that so important a fact would have been alleged in the answers or appeared by the deed.

It is, therefore, not fair to presume that the bankrupt court did wrong, and made a decree, for the sale of the absolute fee-simple estate in the land without the appellee's being a party in the bankrupt case, and without regard to his liens ; but we ought rather to presume that it did what it had a perfect right to do (without his being a party), sell it, subject to the liens, more especially as it seems to have sold for only $187.50, as it could hardly be presumed that the absolute fee-simple in a tract of 375 acres of land, the annual rental value of the cultivated part of which was $100, would not sell for more than that sum ; but, if on the contrary, that the court made a decree for an absolute sale of a fee-simple interest in it, the appellee could not be concluded, or affected by it, unless he had been made a party to the proceedings.

I do not think there is any thing in the first objection taken in the petition as to the jurisdiction of the circuit court of Franklin—the object of the suit was not to recover a debt against the bankrupts, but to enforce a lien acquired before they became bankrupts—conceding that the bankrupt court had jurisdiction of the appellee and of his lien without his having proved his debt, and become a party to the proceedings in bankruptcy. . Still the circuit court has concurrent jurisdiction, yet it ought not, as a matter of comity, and to prevent a conflict of the two jurisdictions, to have proceeded

with the case if it appeared that the bankrupt court had first taken jurisdiction of the same subject.    It has been a settled practice, without exception, so far as I know (except in a few cases in some of the district courts in bankruptcy, where it had been ignored), that the first of the two courts of concurrent jurisdiction, which acquires it in a case, proceeds to make a final disposition of it ; and if it had appeared that the bankrupt court had properly acquired jurisdiction of the lien of the appellee, the circuit court ought, and doubtless would, have refused to proceed further, until it was seen whether the court which first took jurisdiction, would make a final disposition of the subject.    But it does not appear that the bankrupt court ever took jurisdiction of the lien ; and besides, the circuit court does not seem to have taken any steps to enforce the lien until the bankrupt case was ended.    McWhirrith's case, 7 Howard, 617, cited by appellant's counsel, has no bearing on this case.    That case decided that a party could not, by a proceeding commenced in a state court, after an act of bankruptcy, acquire a lien on the bankrupt's property in preference to the right of the assignee, which related back to the time of the bankruptcy. There is nothing in the third ground of error assigned, there was no demurrer which could have been set down for argument.    True, the answer of each of the defendants say, that "the defendant demurs to the plaintiff's bill, and prays that his demurrer may be considered as if more formally pleaded." This is a part of the answer and is a mere exception to the bill to be considered at the hearing, and to avail for any reason that a demurrer for a court of equity or jurisdiction of the matter, would have availed if it had been taken without answering.    See 2d Rob. Prac. (old) p. 297, and cases there cited.    And the last objection is equally untenable. This suit is to enforce a judgment lien under the statute which provides that any judgment may be enforced in a court of

equity—the remedy is in analogy to the *vlagit*, and is not like a proceeding to foreclose a mortgage ; and the practice has been, so far as I know or have been informed, to decree a sale at once, without a day to redeem.

Upon the whole, I think the decree of the circuit court right in every respect and that it ought to be affirmed.